JAMES T. BURTON (Utah Bar No. 11875)
*jburton@kmclaw.com*
MICHAEL A. EIXENBERGER (Utah Bar No. 16446)
*meixenberger@kmclaw.com*
**KIRTON⎪MCCONKIE**
Key Bank Tower
36 South State Street, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

*Attorneys for Sirsi Corporation dba SirsiDynix*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SIRSI CORPORATION *dba* SIRSIDYNIX, a Delaware Corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>SOLUS, UK Ltd., a United Kingdom Limited Company,<br><br>     Defendant. | **COMPLAINT FOR INJUNCTIVE RELIEF**[1]<br><br>Case No.   2:23-cv-00875-DAK<br><br>Judge   Dale A. Kimball |

---

[1] The parties are currently engaged in arbitration before the American Arbitration Association ("AAA"). However, given the imminent risk of irreparable harm, SirsiDynix has filed the instant action to request injunctive relief. SirsiDynix has also filed a Motion for a Temporary Restraining Order and Preliminary Injunction concurrently with this Complaint. This Court retains the power to consider such requests for injunctive relief to prevent irreparable harm even when the underlying dispute is being arbitrated before the AAA. *See, e.g.*, *Gen. Mills, Inc. v. Champion Petfoods USA, Inc.*, No. 20-CV-181 (KMK), 2020 WL 915824, at *3 (S.D.N.Y. Feb. 26, 2020)("Were the Court to decline enjoining Mele pending arbitration (first of arbitrability, and perhaps of the merits), much of the damage Plaintiff seeks to prevent will occur in the time it takes for the arbitrator to be appointed, consider the issues, and deliver a final ruling. Such a delay would indeed render arbitration a 'hollow formality.'"). In the alternative, should the AAA issue injunctive relief before this Court weighs in, SirsiDynix requests that the Court confirm any award for injunctive relief. *See, e.g.*, *Ace/Cleardefense v. Clear Def.*, 47 F. App'x 582 (D.C. Cir. 2002) ("We also conclude that the district court did not err in confirming the award despite its interim nature … . [I]n this case, the interim award is a preliminary injunction, and confirmation of the injunction is necessary to make final relief meaningful.").

Sirsi Corporation dba SirsiDynix ("SirsiDynix"), by and through its undersigned counsel of record, hereby complains against Defendant Solus UK, Ltd. ("Solus") and alleges as follows:

## PARTIES

1.      SirsiDynix is a Delaware Corporation with its principal place of business located at 3300 North Ashton Boulevard, Lehi, UT 84043.

2.      Solus is a United Kingdom limited company with its principal place of business located at Nasmyth Building, Nasmyth Avenue, East Kilbride, Glasgow, Scotland, G75 0QR.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(a)(2) inasmuch as the action is between citizens of a state and citizens or subjects of a foreign state and the matter in controversy exceeds the sum or value of $75,000.

4.      Indeed, for purposes of the inquiry set forth in 28 U.S.C. § 1332(a)(2), SirsiDynix is a citizen of Delaware and Utah while Solus is a citizen or subject of the United Kingdom. Thus, there is complete diversity of the parties. Moreover, as set forth below and incorporated herein, the amount in controversy requirement of 28 U.S.C. § 1332 is satisfied because there is more than $75,000 at issue, exclusive of costs and interest.

5.      This Court has personal jurisdiction over Solus under the principles of either specific or general jurisdiction. In particular, Solus conducts business and provides services in Utah. Moreover, the causes of action alleged herein arise out of action or contact in Utah, or otherwise relate to Solus' contacts with Utah.

6.      Indeed, in accordance with the October 14, 2016, Development Agreement (the "Development Agreement") and the related July 15, 2020, Amendment to the Development

Agreement (the "Amendment") between SirsiDynix and Solus, Solus provided certain software related services to SirsiDynix in Utah, and received payment from SirsiDynix in Utah.

7.    The Development Agreement further provides that it "shall be governed in all respects by the domestic laws of and in the courts of the State of Utah, USA."

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) inasmuch as a substantial part of the events or omissions giving rise to SirsiDynix's claims occurred in this District.

## GENERAL ALLEGATIONS

### A.  SirsiDynix Is a Leader in the Integrated Library System Software Industry

9.    SirsiDynix is the world's leading provider of library technology solutions, connecting over 300 million people with information and resources at more than 23,000 academic, public, school, government, and corporate library facilities in over 70 countries.

10.    SirsiDynix recognizes the crucial role libraries play as a communal space for individuals to gather, connect, exchange ideas, and create.

11.    To assist in this critical mission, SirsiDynix strives to provide reliable technology to a variety of public, academic, K-12, consortia, and special libraries so they can better focus on interacting with and serving their communities.

12.    To this end, SirsiDynix has been providing software and services to libraries and their communities for over 40 years.

13.    The software and services provided by SirsiDynix assist with library automation; allow library patrons to locate a library, search for relevant materials and services, and use, reserve, or checkout those materials; and generally help libraries with their marketing efforts to improve

community engagement, among other things.

14.     One of SirsiDynix's most well-recognized software-based products is the BLUEcloud Library Services Platform.

15.     The BLUEcloud Library Services Platform is highly configurable to meet a library's specific needs. Indeed, from acquisitions to cataloging and circulation, from mobile discovery to physical and digital items, to analytics showing the library's community impact, the BLUEcloud Library Services Platform gives a library all the software-based tools that it may need.

### B.  *Solus Was Hired By SirsiDynix to Develop a Mobile Application for SirsiDynix*

16.     Solus was retained by SirsiDynix in approximately October 2016 to develop certain software related to the BLUEcloud Library Services Platform.

17.     Specifically, Solus was hired as a vendor to work on a mobile application that would complement the BLUEcloud Library Services Platform.

18.     At that time, Solus had "developed and s[old] an app for libraries that [was] similar in purpose and functionality to the SirsiDynix BookMyne and BookMyne+ apps."[2]

19.     Solus was retained to "improve the BookMyne+ product so that the resulting next-generation product (the 'Product') [could] be sold by SirsiDynix . . . " in conjunction with the BLUEcloud Library Services Platform.

20.     Pursuant to this arrangement, Solus agreed "that SirsiDynix *is the sole owner* of all rights and remedies in and to any intellectual property, products or information resulting in whole or in part from [Solus'] work . . . on the Product, and all products or information derived or to be derived from the work on the Product, regardless of whether such products or information are

---

[2] *See* Development Agreement, at *Recitals* (A).

subject to patent, copyright, or other protection."[3]

21.     Put simply, anything that "originated pursuant to" the Development Agreement was "the *exclusive property of SirsiDynix* including [all] trade secret, patent, title to copyright in all copyrightable material, and any other protectable rights or interests . . . and may be used by SirsiDynix *in any manner whatsoever*."[4]

22.     The BLUEcloud Mobile software was subsequently developed by Solus and, per the Development Agreement, all intellectual property rights associated with the BLUEcloud Mobile software are "the exclusive property of SirsiDynix" and "may be used by SirsiDynix in any manner whatsoever."[5]

23.     The parties later executed the Amendment in July 2020.[6]

24.     The Amendment provided that "[o]n or before March 31, 2021, Solus shall transfer to SirsiDynix *all technology necessary for successful performance of BLUEcloud Mobile* including but not limited to copies of software source code and object code, replication of a server instance, assistance with build environment, proof of build, and specifications/documentation/user guides."[7]

25.     Solus also agreed to "transfer to SirsiDynix a*ll code and other necessary technology for enhancement and upgrades* on a semi-annual basis" and to "provide any code *needed to successfully support and maintain BLUEcloud Mobile* . . . along with build scripts and provisioning tools used to compile, package and deploy the product, including any documentation for these

---

[3] *See id.* at ¶ 6(A)(emphasis added).
[4] *See id.* at ¶ 6(D)(emphasis added).
[5] *See id.*
[6] *See generally* Amendment.
[7] *See id.* at ¶ II(a) (emphasis added).

tools."[8]

26.     These obligations were material to the Development Agreement and Amendment.

**C. The Relationship Between SirsiDynix and Solus Began to Deteriorate Because of Solus' Failure to Meet Certain Obligations and Milestones**

27.     For some time, the relationship between SirsiDynix and Solus generally functioned as intended. However, the relationship between SirsiDynix and Solus began to sour when Solus failed to meet certain obligations and milestones.

28.     First, Solus failed to make agreed enhancements to BLUEcloud Mobile as required in Schedule 1 to the Development Agreement.

29.     For example, Solus' breaches include, but are not limited to, Solus' failure to: (1) provide an option for the library to provide separate display of physical and digital holds in patron account views; (2) provide a visual indicator of available holds and overdue items; and (3) provide for library announcements.

30.     Second, Solus also failed to meet its customer defect resolution and support obligations as required by, *inter alia*, Paragraphs 2 and 10 of the Development Agreement and in Schedule 1 thereto.

31.     For example, Solus' breaches include, but are not limited to: (1) Solus took several months to resolve an issue for users who could not access their accounts via BLUEcloud Mobile (they couldn't login); (2) SirsiDynix was informed by a Solus employee that at one point approximately 20-40% of end users were unable to use BLUEcloud Mobile; and (3) BLUEcloud Mobile has repeatedly had difficulty supporting and maintaining linked patron accounts.

---

[8] *See id.* (emphasis added).

6

32.     Third, Solus also failed to make code deliveries as outlined in the Amendment.

33.     For example, Solus' breaches include, but are not limited to: (1) as Mr. Wishart admitted in his May 25, 2023 letter, Solus missed its October 13, 2021 transfer obligation and has made no transfers since that date; and (2) bug fixes, enhancements and JIRA requests actioned from April 1, 2021 through the present have yet to be delivered.

34.     Simply put, the BLUEcloud Mobile software provided by Solus did not meet SirsiDynix's reasonable expectations or those of its customers.

35.     These breaches materially hindered the successful performance of BLUEcloud Mobile.

36.     These breaches and related technical issues have caused, and continue to cause, substantial damage to SirsiDynix which include lost sales, customer attrition, diminished reputation, and damages.

37.     At the same time, Solus also spread misinformation to SirsiDynix's customers by advising them that "it is possible to extract . . . the [BLUEcloud Mobile] subscription out of the [SirsiDynix] annual renewal."

38.      Solus' apparent efforts to steer customers away from BLUEcloud Mobile to Solus' new competing application was highly concerning to SirsiDynix.

### D.  SirsiDynix Attempted to Mitigate the Harm Cause by Solus' Failures By Retaining a Phase 2, LLC to Assist with the Development of SirsiDynix's Mobile Application

39.     In an effort to mitigate its damages and ensure the on-going operation of BLUEcloud Mobile, SirsiDynix retained Phase 2, LLC ("Phase 2") to address the clear technical

shortcomings and provide the "enhancement[s] and upgrades"[9] that Solus failed to provide since October 13, 2021, among other things.

40.    Upon information and belief, Phase 2 is a contractor that: (i) will undertake virtually any kind of software development project commissioned by any customer, (ii) does not, on its own account, further develop or exploit any of these projects, and (iii) has never competed with Solus (or SirsiDynix) for the business of any customer, including Pioneer Library System.[10] Indeed, even a cursory review of Phase 2's website reveals that they "are a software consultancy building custom solutions for scaling organizations" that "has built world class software for large-scale enterprises, well-funded startups and more."[11]

41.    In other words, unlike Solus (and SirsiDynix), which provides "highly functional and scalable mobile applications for libraries,"[12] Phase 2 works on a variety of different matters for a variety of different customers. This is distinguishable from the niche market of specifically selling software to libraries, which Phase 2 clearly does not do. Indeed, Phase 2 is not recognized as a library technology vendor in the industry,[13] and offers no competing application for sale on either the iOS App Store or Google Play.[14]

42.    SirsiDynix's efforts to mitigate the damage caused by Solus—by engaging Phase 2, among other things—came at substantial cost to SirsiDynix. However, it was necessary to prevent additional lost sales, customer attrition, diminished reputation, and damages to SirsiDynix.

---

[9] *See*, Amendment, at ¶ II(a).
[10] *See Home*, PHASE 2, https://phase2online.com/.
[11] *See id.*
[12] *See Our Company*, SOLUS, https://wp.sol.us/our-company/.
[13] *See Library Technology Vendors*, LIBRARY TECHNOLOGY VENDORS, https://librarytechnology.org/vendors/.
[14] *Cf. Solus Library App*, GOOGLE PLAY, https://play.google.com/store/apps/details?id=solus.LibraryApp.

### E. *Solus Attempted to Interfere with Phase 2, LLC and Further Escalated the Dispute Between SirsiDynix and Solus*

43.     After learning that Phase 2 had been retained to assist with BLUEcloud Mobile (which was owned by SirsiDynix), Solus began taking affirmative steps to interfere with the relationship between SirsiDynix and Phase 2.

44.     On June 1, 2023, SirsiDynix received a letter from Solus' counsel demanding that SirsiDynix discontinue its work with Phase 2 and threatening legal action for purported breach of contract and trade secret misappropriation, among other things.

45.     Shortly thereafter, on June 12, 2023, Solus' counsel sent a similar letter to Phase 2 demanding that it cease all work for SirsiDynix.

46.     SirsiDynix responded to these allegations on June 16, 2023. Among other things, SirsiDynix explained the baseless nature of Solus' claims and highlighted Solus' clear breaches of the Development Agreement and Amendment.

47.     Although SirsiDynix owned the BLUEcloud Mobile software, it soon became clear that Solus would go to great lengths to prevent to SirsiDynix from getting technical support for BLUEcloud Mobile from Phase 2 rather than Solus.

48.     As a result, SirsiDynix determined that its best path forward was to develop all new BLUEcloud Mobile code on an improved modern tech stack and asked Phase 2 to assist with these development efforts.

49.     SirsiDynix also required that the project be developed by Phase 2 using a new tech stack with new code.

50.     Solus' actions have created various roadblocks that have interfered with SirsiDynix's  ability to provide full support for BLUEcloud Mobile in a timely fashion.

51.     For some time, SirsiDynix attempted to work with Solus to resolve the dispute and to cooperatively wind down the relationship between SirsiDynix and Solus. SirsiDynix believed that a cooperative winding down of the relationship was in the best interest of both SirsiDynix and Solus, and their respective customers.

52.     SirsiDynix believed that the parties were making progress towards deescalating the dispute.

53.     However, on November 17, 2023—the Friday before the Thanksgiving holiday—Solus' counsel emailed SirsiDynix's counsel a Demand for Arbitration and Statement of Claim that was filed with the American Arbitration Association.

54.     This inaugurated formal arbitration with respect to the dispute between SirsiDynix and Solus.

### F.  Solus Undertook Unilateral Actions to Shut Down BLUEcloud Mobile in Violation of its Contractual Obligations to SirsiDynix

55.     Without any prior direct notice to SirsiDynix, the email also indicated that "within the next 72 hours, Solus will be ceasing all support to SirsiDynix."

56.     SirsiDynix spent the ensuing days working to determine what "ceasing all support" meant and what impact it would have on the BLUEcloud Mobile application and SirsiDynix's business operations.

57.     On November 26, 2023, SirsiDynix learned that BLUEcloud Mobile had been shut down for all customers in the Americas, EMEA, and Asia–Pacific regions. Indeed, all customers using BLUEcloud Mobile were unable to open and use the application.

58.     SirsiDynix is still in the process of troubleshooting the technical issues caused by Solus' actions. However, it appears that Solus retained a "kill switch" that allowed it to unilaterally

shutdown BLUEcloud Mobile.

59.     Upon information and belief, Solus intentionally built a "kill switch" into BLUEcloud Mobile by retaining control of certain components required to make BLUEcloud Mobile function.

60.     Specifically, while SirsiDynix owns the underlying code for BLUEcloud Mobile and host the servers that BLUEcloud Mobile uses to work, it appears that BLUEcloud Mobile makes certain calls to the "sol.us" domain, which Solus owns.

61.     If the specified "sol.us" domain is not up and running, BLUEcloud Mobile cannot be opened and used by the library or its patrons.

62.      Upon information and belief, on or about November 26, 2023, Solus unilaterally shutdown access to services required by the application on the sol.us domain.

63.     Solus' decision to build a "kill switch" and efforts to flip the switch on or about November 26, 2023 are contrary to its clear contractual obligations to SirsiDynix.

64.     Indeed, among other things, the Amendment provides that "[o]n or before March 31, 2021, Solus shall transfer to SirsiDynix *all technology necessary for successful performance of BLUEcloud Mobile* . . . ."[15]

65.     The Amendment further provides that "Solus will provide any code needed to successfully support and maintain BLUEcloud Mobile for existing and future SirsiDynix customers who are using or who will use BLUEcloud Mobile . . . ."[16]

66.     Solus failed to comply with these obligations by intentionally requiring BLUEcloud

---

[15] *See* Amendment, at ¶ II(a) (emphasis added).
[16] *See id.* (emphasis added).

Mobile to make certain calls to the "sol.us" domain and then unilaterally shutting off access to the "sol.us" domain without making the appropriate arrangements.

### G. Solus Actions Have Caused Irreparable Harm to SirsiDynix

67.    As noted above, SirsiDynix cannot remedy Solus' actions to shut down the "sol.us" domain that BLUEcloud Mobile depends upon because the domain is operated and controlled exclusively by Solus.

68.    SirsiDynix also cannot update the BLUEcloud Mobile software to call to another domain—owned by SirsiDynix—because Solus has refused to provide the credentials and other information required to access the Apple Store and Play Store accounts from which BLUEcloud Mobile can be downloaded.

69.    Without these credentials, SirsiDynix cannot publish an updated version of BLUEcloud Mobile—that calls to a domain owned by SirsiDynix—to the Apple Store and Play Store, so it could be downloaded by SirsiDynix's customers and their patrons.

70.    In sum, Solus has unilaterally shut down BLUEcloud Mobile and deprived SirsiDynix of the mechanism for fixing it.

71.    Solus' actions appear to have been done in bad faith to harm SirsiDynix. Indeed, at or around the same time that Solus flipped the "kill switch" to disable BLUEcloud Mobile, Solus sent an email to customers using BLUEcloud Mobile in a transparent effort to solicit them as customers.

72.    One such email from Neil Wishart—the CEO of Solus—stated as follows:

As you will know, SOLUS built BLUEcloud Mobile for SirsiDynix and has subsequently developed and supported it since its launch in 2018.

SOLUS's contract with SirsiDynix for BLUEcloud Mobile terminated on 13th

October 2021 and was not extended. SirsiDynix has been aware of the requirement to replace or support BLUEcloud Mobile from that point.

SOLUS agreed to continue supporting BLUEcloud Mobile from the date of termination for two years to 13th October 2023. We extended support beyond that date as a courtesy to SirsiDynix and to customers, but had to inform SirsiDynix on Friday 17th November that we had to cease support at close of business on Monday 20th November.

We recognise that SirsiDynix customers have been very supportive of BLUEcloud Mobile and many will be disappointed with this outcome. In line with libraries using other competing ILS platforms, or those using the SOLUS Library App directly, it was our wish that SirsiDynix customers would have been upgraded to the latest SOLUS built Library App but this was not to be. We assume that SirsiDynix has made preparations to replace the functionalities we provide, so that your user experience is uninterrupted.

Best wishes for your future provision and please do not hesitate to contact us if there is further information you would like us to provide.

Regards,
Neil

73.    To date, BLUEcloud Mobile remains inoperable by SirsiDynix's customers despite SirsiDynix's repeated efforts to restore service to its customers.

74.    BLUEcloud mobile is currently being used by approximately 225 library systems across the globe, which depend on the continued operation of BLUEcloud mobile.

75.    By way on context, BLUEcloud mobile has historically been opened on over 500,000 devices a month and used to perform approximately 2.4 millions searched in any given month.

76.    SirsiDynix's revenue from BLUEcloud Mobile constitutes a meaningful portion of its total revenue.

77.    SirsiDynix has already received numerous complaints and inquiries from BLUEcloud Mobile customers regarding the status of the application.

78.    Without a clear workaround to address Solus' actions, SirsiDynix is unable to provide a timeline for fixing the problem.

79.    Many of SirsiDynix's customers that use BLUEcloud Mobile also use other modules from the BLUEcloud Library Services Platform.

80.    Therefore, lost sales, customer attrition, diminished reputation, and damages regarding BLUEcloud Mobile are also highly likely to cause lost sales, customer attrition, diminished reputation, and damages to SirsiDynix's other product lines.

81.    Additionally, the integrated library system software industry is a small industry with relatively few participants. As such, SirsiDynix's hard-won reputation for superior quality software-based solutions and related services is one of SirsiDynix's chief assets.

82.    Indeed, in an industry with high customer expectations and demanding requirements, SirsiDynix's reputation is ultimately its primary stock in trade.

83.    Simply put, whether isolated to BLUEcloud Mobile or a broader outage, service outages that prevent customers from using SirsiDynix's products and services impact the very heart of SirsiDynix's business.

84.    This harm cannot be adequately compensated or remedied by a later monetary award. Indeed, if left unaddressed, Solus' actions have the potential to jeopardize SirsiDynix's ability to effectively operate its business and maintain its reputation in the industry.

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

85.    SirsiDynix re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

86.    SirsiDynix and Solus entered into the valid, binding, and enforceable Development

Agreement and related Amendment, wherein SirsiDynix would provide certain software to SirsiDynix in exchange for monetary compensation.

87.    SirsiDynix fully performed under the Development Agreement and related Amendment.

88.    By the acts alleged herein, Solus has materially breached the Development Agreement and related Amendment.

89.    Specifically, Amendment provided, *inter alia*, that "Solus shall transfer to SirsiDynix all technology necessary for successful performance of BLUEcloud Mobile including but not limited to copies of software source code and object code, replication of a server instance, assistance with build environment, proof of build, and specifications/documentation/user guides."[17]

90.    The Amendment also provided that Solus would "transfer to SirsiDynix all code and other necessary technology for enhancement and upgrades on a semi-annual basis" and to "provide any code needed to successfully support and maintain BLUEcloud Mobile . . . along with build scripts and provisioning tools used to compile, package and deploy the product, including any documentation for these tools."[18]

91.    However, in building BLUEcloud Mobile, Solus required that application to make certain calls to domains (*e.g.*, sol.us) that were retained and owed by Solus.

92.    Despite the critical role that these domains played in the operation of BLUEcloud Mobile, Solus refused to transfer these domains to SirsiDynix to ensure that SirsiDynix had "all

---

[17] *See* Amendment, at ¶ II(a).
[18] *See id.*

technology necessary for successful performance of BLUEcloud Mobile."

93.    Solus also refused to make the appropriate changes to BLUEcloud Mobile to ensure that it made the appropriate calls to domains hosted and owned by SirsiDynix rather than Solus.

94.    Worse still, on or about November 26, 2023, Solus unilaterally shut off the domains (*e.g.*, sol.us) that BLUEcloud Mobile needed to operate with little advanced notice to SirsiDynix.

95.    Further complicating matters, Solus also withheld the necessary credentials to publish an updated version of BLUEcloud Mobile to iOS App Store and Google Play, which are necessary to attempt to remedy the situation.

96.    Without the ability to publish an updated version of BLUEcloud Mobile or corrective actions by Solus to restore connectivity, BLUEcloud Mobile is and will remain inoperable to SirsiDynix's customers.

97.    This constitutes a material breach of Solus' obligations to "transfer to SirsiDynix all technology necessary for successful performance of BLUEcloud Mobile" and "provide any code needed to successfully support and maintain BLUEcloud Mobile . . . along with build scripts and provisioning tools used to compile, package and deploy the product, including any documentation for these tools," among other things.

98.    As a direct and proximate result of Solus' breaches, SirsiDynix has been damaged in an amount to be proven at trial, but in no event less than the millions of dollars that SirsiDynix has or will incur in developing a replacement to BLUEcloud Mobile and/or the lost profits that SirsiDynix suffered as a result of Solus' actions plus consequential damages, interest, costs, and attorneys' fees.

99.    In addition to these quantifiable harms, Solus' breaches have caused and will

continue to cause SirsiDynix irreparable harm and threaten SirsiDynix's business operations and reputation.

100.    Allowing the conduct to continue and awarding monetary compensation after the fact cannot sufficiently remedy the harm caused to SirsiDynix directly and indirectly by Solus' actionable conduct.

## SECOND CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

101.    SirsiDynix re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

102.    Every contract contains an implied covenant of good faith and fair dealing that the parties will do nothing to deprive each other of the reasonably anticipated benefits of the contract.

103.    The duty not to act in bad faith or deal unfairly thus becomes a part of the contract, and, as with any other element of the contract, the remedy for its breach generally is on the contract itself.

104.    SirsiDynix has performed all of its obligations and conditions precedent under the Development Agreement and related Amendment.

105.    Based upon the Development Agreement and related Amendment, SirsiDynix reasonably expected and had the right to receive everything necessary for the successful performance and operation of BLUEcloud Mobile, including, but not limited to the control and/or continued access to all domains necessary to run BLUEcloud Mobile.

106.    Solus effectively denied SirsiDynix of its reasonably anticipated benefits under the Development Agreement and related Amendment by requiring BLUEcloud Mobile to make certain calls to domains owned and controlled by Solus to operate properly, and by failing to

transfer ownership and control of these domains.

107.   Solus further denied SirsiDynix of its reasonably anticipated benefits under the Development Agreement and related Amendment by shutting off access to the domains owned and controlled by Solus, which resulted in BLUEcloud Mobile being rendered inoperable by SirsiDynix's customers.

108.   These conduct constitutes a breach of Solus' covenant of good faith and fair dealing.

109.   As a direct and proximate result of Solus' breaches, SirsiDynix has been damaged in an amount to be proven at trial, but in no event less than the millions of dollars that SirsiDynix has or will incur in developing a replacement to BLUEcloud Mobile and/or the lost profits that SirsiDynix suffered as a result of Solus' actions plus consequential damages, interest, costs, and attorneys' fees.

110.   In addition to these quantifiable harms, Solus' breaches have caused and will continue to cause SirsiDynix irreparable harm and threaten SirsiDynix's business operations and reputation.

111.   Allowing the conduct to continue and awarding monetary compensation after the fact cannot sufficiently remedy the harm caused to SirsiDynix directly and indirectly by Solus' actionable conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, SirsiDynix requests relief as follows:

1.   For an order that Solus has breached the Development Agreement and/or related Amendment;

2.      For an order that SirsiDynix has not materially breached the Development Agreement and/or related Amendment;

3.      For a temporary restraining order and/or preliminary injunction requiring Solus to provide any and all technical components and/or access necessary for the successful performance of BLUEcloud Mobile, including, but not limited to, (1) ensuring that the sol.us domains necessary to the operation of BLUEcloud Mobile are up and running, and (2) providing the credentials necessary for SirsiDynix to access the iOS App Store and Google Play accounts associated with BLUEcloud Mobile;

4.      For an award of reasonable attorneys' fees, costs, and expenses as authorized by law; and

5.      For such other and further relief as the Court may deem just and proper.

DATED this 4th day of December, 2023.

**KIRTON | McCONKIE**

 /s/ *James T. Burton*
James T. Burton
Michael A. Eixenberger

*Attorneys for Sirsi Corporation*
 *dba SirsiDynix*